IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| JULIE STAFFORD, | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| vs. | § | C.A. NO. 6:24-cv-419 |
| | § | |
| | § | **JURY TRIAL REQUESTED** |
| EAST TEXAS HEALTH | § | |
| SYSTEM, LLC DBA | § | |
| UT HEALTH EAST TEXAS | § | |
| | § | |
| **Defendant** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW Plaintiff, Julie Stafford who files this Original Complaint complaining of East Texas Health System, LLC dba UT Health East Texas (hereinafter "UT Health") as follows:

### I. PRELIMINARY STATEMENT

1. This lawsuit arises from violations of the Americans with Disabilities Act ("ADA") by UT Health pertaining to its employment and termination of Plaintiff Julie Stafford.

2. It is the legal responsibility of UT Health to promulgate and implement policies and procedures providing, in part, that its employees are not subjected to disability discrimination. Further, it is Defendant UT Health's duty to promulgate and implement policies and procedures that do not promote known acts of disability discrimination and retaliation for requesting accommodation of actual disabilities. It is also Defendant UT Health's legal obligation to take whatever action is necessary to investigate reports of disability discrimination by employees, to stop that disability discrimination once known, and to ensure that once disability discrimination is reported no retaliation or reprisal is permitted against the employee who reports or otherwise opposes such protected conduct.

3.       Plaintiff seeks lost wages and benefits, compensatory damages, punitive damages against UT Health, court cost, and attorney's fees.

## II.     JURISDICTION AND PARTIES

4.       Jurisdiction of this Court is invoked pursuant to Section 107(a) of the Americans with Disabilities Act (hereinafter "ADA"), 42 U.S.C. § 12117, which incorporates by reference § 706 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5, providing for relief against discrimination on the basis of disability in employment.

5.       All conditions precedent to jurisdiction under § 706 of Title VII, 42 U.S.C. § 2000e-5(f)(3), have occurred or been complied with:

(a)     a charge of employment discrimination on the basis of disability was filed with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the commission of the unlawful employment practice alleged herein.

(b)     A Notification of Right to Sue was received from the EEOC on August 19, 2024.

(c)     This Complaint has been filed within 90 days of receipt of the EEOC's Notification of Right to Sue.

6.       Plaintiff, Julie Stafford, is a citizen of the United States and the State of Texas who resides in Whitehouse, Texas.

7.       All of the discriminatory employment practices alleged herein were committed within the Eastern District of Texas.

8.       Defendant East Texas Health System, LLC dba UT Health East Texas is a Texas entity located within the boundaries of the Eastern District of Texas, Tyler Division and was Plaintiff's employer in Tyler, Texas at the time the alleged violations of the Americans with Disabilities Act occurred.

9.       UT Health may be served with the Complaint by serving its registered agent for service, Corporation Service Company dba CSC - Lawyers Incorporating Service Company, 211 E.

7th Street, Suite 620, Austin, TX 78701-3218. UT Health is a "person" within the meaning of § 101(7) of the ADA, 42 U.S.C. § 12111(7), and § 701 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

10. UT Health is engaged in an industry that affects commerce within the meaning of Section 101(7) of the ADA, 42, U.S.C. § 12111(7), and Section 701 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

11. UT Health employs 15 or more employees and is an "employer" within the meaning of Section 101(5)(A) of the ADA, 42 U.S.C. § 12111(5)(A).

## II. STATEMENT OF FACTS

12. Plaintiff Stafford was employed by UT Health Tyler in the GI lab at the Olympic Center from August 10, 2020 until she was terminated on August 24, 2023.

13. In June of 2022, Stafford went to her manager, Nicole Hickerson, regarding a new nurse anesthetist that was working in our area. This CRNA was wearing a fragrance that was very strong and would linger in the room long after she had left the area. The fragrance was triggering Stafford's migraines to the point that she had to leave work and would be sick for several days following being exposed.

14. In July or August 2022, there was a new nurse hired that wore the same fragrance that triggered Stafford's migraines. Stafford was having to leave work often because of the triggering of her migraines which forced her to use much of her PTO. Stafford again went to her manager to address the fragrance and was told she would address the subject. Fast forward to September and still nothing. Stafford's co-workers were still wearing the triggering fragrance, and her manager had never taken any action to address the situation after Stafford had gone to her a second time.

15. Stafford came in one morning for work, where it was just her, the CRNA wearing

the triggering fragrance and the charge nurse. Stafford was so exasperated and frustrated with the whole situation, she went to the charge nurse that morning and complained about the CRNA nurse wearing the triggering fragrance. At that point the charge nurse told Stafford to go home. Stafford stated that she didn't think it was right that she was the one that had to go home and lose hours over the CRNA wearing the triggering fragrance. Before she left the hospital, Stafford sent a long text message to the department director explaining the situation and asking for his help with the matter.

16. Several days later Stafford was called into my manager's office where a member of the HR department, Marquis, was also there. Stafford was being written up for being 'loud' with the charge nurse when she complained about the CRNA wearing the triggering fragrance. During this meeting Stafford was told by the HR representative that she had humiliated a nurse and was also told the CRNA that was wearing the triggering fragrance told the manager that "she didn't work for the hospital (she was a locum) and she was going to wear whatever she wanted."

17. After this incident, Stafford made the decision to undergo a surgical procedure in hopes to better control her migraines because she was missing several days of work a month. Stafford was out for this procedure and recovery from October 2022 until December 2022.

18. In April 2023, in a huddle one afternoon with the charge nurse, one of the employees was wearing a very strong scent that was enveloping the whole room. The triggering fragrance caused Stafford to cover her nose and mouth to avoid the scent. As the huddle went on, Stafford stated that someone had on some really strong perfume and that it was making her sick. At that point the charge nurse said the huddle was over anyway and told Stafford to go home.

19. The following day the employee that had on the triggering fragrance the previous day, was assigned to the same area in which Stafford was working and had on the same scent. It was enveloping the whole room. Stafford couldn't get away from the smell and soon she was

nauseous, and her head began hurting. At that point Stafford went to her manager and told her that she was going to have to leave for the day because the employee had on a perfume that had triggered a migraine.

20. When Stafford returned to work the following day, the same employee came to work wearing the same triggering fragrance again. Stafford went to her manager and asked if she could please say something to the employee, to which she stated that she had the previous day. Stafford told the manager that the employee had on the triggering fragrance again and that it was making her sick. Stafford went on to point out that it was a hospital policy that employees were not to wear any kind of scent while on shift and the manager agreed with her. The employee wearing the triggering fragrance was scheduled to work in a different area than Stafford but had to come into the area to bring in beds or to gather linens and items that they would need in the area she was assigned.

21. Her manager had asked the employee wearing the triggering fragrance to go change her scrubs, but she only changed her top and still smelled very strongly of the scent. When she would have to come into Stafford's area, Stafford would have to walk to the opposite side of the room to try and stay away from the scent. When the employee wearing the triggering fragrance realized what Stafford was doing, she started intentionally coming into her area and laughing when Stafford had to walk away. Stafford was standing at the sink at one point speaking to a coworker when the employee wearing the triggering fragrance walked in and mumbled under her breath, "lying ass people", and walked off. The employee wearing the triggering fragrance continued to taunt Stafford in this manner all day.

22. A few days later Stafford was called into her manager's office and again the HR representative, Marquis, was present. Stafford was written up at this time because the employee wearing the triggering fragrance had gone to HR and complained that Stafford harassed her by

covering her face in the huddle meeting. During this meeting the HR representative stated that Stafford was exhibiting "bully behavior."

23. On the weekend following this incident, the employee wearing the triggering fragrance and Stafford were on Saturday and Sunday, during which she disappeared often and was generally unavailable during many times that she was needed to work. Stafford texted her manager on Sunday explaining her frustrations with the employee wearing the triggering fragrance. On Monday, the employee wearing the triggering fragrance came in on her day off and falsely stated to the manager that Stafford had abandoned a patient in the hallway of the OR. When Stafford explained to the manager what actually happened Stafford was cleared of any wrongdoing. At this point, Stafford began to avoid the employee wearing the triggering fragrance.

24. In August of 2023 the employee wearing the triggering fragrance and Stafford were assigned to the same area to work. Stafford was talking to another coworker and the employee thought they were talking about her. She also became angry that day because Stafford would not speak directly to her. The employee wearing the triggering fragrance bypassed the manager and went directly to Marquis, the HR person over our area, and made a complaint that Stafford was harassing her by not speaking to her. Stafford alone was called into my manager's office to discuss the situation at which time Stafford explained how she felt regarding working in a hostile environment with the employee wearing the triggering fragrance.

25. About a week later Stafford was called into my manager's office where again the HR representative, Marquis, was in attendance. The employee wearing the triggering fragrance was also present at this meeting. This meeting was an hour and forty-five minutes of Stafford defending herself over her complaints about the employee wearing the triggering fragrance. None of the members of management in the meeting ever took the position that the employee wearing the triggering fragrance should be prevented from wearing fragrances at work despite the fact that

hospital policy stated that no fragrances should be worn in the workplace. Because the meeting was accomplishing nothing, Stafford walked out of the door but turned back around and asked what was going to happen in a couple of weeks when we were back in here with this "bullshit" to which the HR representative smiled quickly and then stated that he would be opening a new investigation in which he would be stating that Stafford used profanity with her manager.

26.     Two days later, August 24, 2023, Stafford was called out of a procedure to my manager's office in which the director told me that Stafford was terminated due to the events that happened in the previous meeting.

### III.     CLAIMS FOR RELIEF

### (A) AMERICANS WITH DISABILITIES ACT

27.     The allegations contained in Paragraphs 1 through 26 are hereby incorporated by reference.

28.     As a result of her medical conditions described herein, Plaintiff has been an individual with a "disability" within the meaning of Section 3(2) of the Americans with Disabilities Act, 42 U.S.C. § 12102(2).  More particularly, Plaintiff has impairments that substantially limits one or more of her major life activities, has a record of such an impairment, and was regarded by UT Health as having such an impairment.

29.     Plaintiff is a "qualified individual with a disability" as that term is defined in § 101(8) of the ADA, 42 U.S.C. § 12111(8).  More specifically, Plaintiff is an individual with a disability who, with reasonable accommodation, can perform the essential functions of her job as a nurse for UT Health.

30.     The effect of these unlawful practices has been to deprive Plaintiff of equal employment opportunities, and to otherwise adversely affect her employment status as an individual with a disability, *inter alia*, allergies to certain fragrances, within the meaning of the

ADA. Based upon the stated allegations, Plaintiff asserts four claims under the ADA: (1) Disparate treatment based upon Defendant's termination of Plaintiff based her being an individual with disabilities; (2) failure to make reasonable accommodation to Plaintiff's disabilities, which constitutes discrimination against Plaintiff with respect to terms, conditions, or privileges of employment in violation of Section 102(b)(5)(A) of the ADA, 42 U.S.C. § 12112(b)(5)(A) (3) regarding Stafford has a person with a disability, and (4) retaliating against Stafford for seeking accommodation of her disability. In connection with Plaintiff's accommodation claim, UT Health failed to undertake any good faith efforts, in consultation with Plaintiff, to identify and make a reasonable accommodation with Plaintiff.

### IV.   ACTUAL DAMAGES

31.   As a direct and proximate result of UT Health's discrimination on the basis of disability and violation of the ADA, Plaintiff has suffered lost wages and benefits and lost employment opportunities.

32.   Defendant's failure to make reasonable accommodation to Plaintiff has caused, continues to cause, and will cause Plaintiff to suffer substantial damages for pecuniary losses, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

33.   Defendant intentionally inflicted extreme emotional distress upon Plaintiff by intentionally discharging Plaintiff on the basis of her disability. Plaintiff has suffered extreme emotional distress, embarrassment, severe disappointment, indignation, shame, despair, and public humiliation due to Defendant's discharge of Plaintiff.

34.   The unlawful employment practices complained of above were willful within the meaning of Section 706(g)(1) of Title VII, 42 U.S.C. § 2000e-5(g)(1), as incorporated by Section 107(a) of the ADA, 42 U.S.C. § 12117(a).

### V.   PUNITIVE DAMAGES

35. The conduct committed by Defendant against Plaintiff is the type of conduct demonstrating malice or reckless indifference to the rights of the Plaintiff. Therefore, Plaintiff additionally brings suit for punitive damages.

## VII. ATTORNEY'S FEES AND EXPERT FEES

36. A prevailing party may recover reasonable attorney's and experts' fees. SEE 42 U.S.C. §2000e-5(k). Plaintiff seeks all reasonable and necessary attorneys' fees in this case, including preparation and trial of this lawsuit, post-trial, pre-appeal legal services, and any appeals.

## VIII. JURY DEMAND

37. Plaintiff demands trial by jury.

## IX. RELIEF REQUESTED

38. Plaintiff requests the judgment of this Court against Defendant, UT Health, Inc. as follows:

   (a) Find and hold that Plaintiff has suffered from Defendant's acts of discrimination on the basis of her disability;

   (b) Order that Plaintiff be awarded the back pay she would have earned, with related monetary benefits and interest thereon, had she been reinstated to her position;

   (c) Award Plaintiff compensatory damages in an amount to be determined at trial of this matter;

   (d) Requiring Defendant pay to Plaintiff damages for mental distress imposed upon Plaintiff through and as a result of the aforementioned discriminatory acts;

   (e) Award Plaintiff attorney fees and expert fees, including litigation expenses, and the cost of this action; and

   (f) Grant such other and further relief as may be just and proper.

Respectfully submitted,

/s/ *William S. Hommel, Jr.*
William S. Hommel, Jr.
State Bar No. 09934250
bhommel@hommelfirm.com
HOMMEL LAW FIRM PC
5620 Old Bullard Road, Suite 115
Tyler, Texas 75703
(903) 596-7100 Phone/Facsimile

ATTORNEY FOR PLAINTIFF